REDMANN, Judge
(dissenting).
Perhaps the most basic procedural essential of due process of law is the requirement of notice and opportunity for hearing.
The majority opinion refuses all opportunity for a hearing to plaintiff, and deprives plaintiff of its property without due process of law in violation of La.Const. Art. 1, § 2, and closes the courts and administers justice with denial, in violation of La.Const. Art. 1, § 6.
In doing so, the majority suspends a sword of financial ruin over virtually every property owner in the state (“the parish of Orleans excepted”).
If the commission can change assessments after all administrative review time has passed, and never be subject to having its action questioned, then it can take away every citizen’s property by merely multiplying his assessment 30 times (as here), or 300 or 30,000 times. The majority of this panel of this court would not even hear the citizen who complained that the increase was incorrect.
La.Const. Art. 10, § 1, provides “ * * * all tax-payers shall have the right of testing the correctness of their assessments before the courts at the domicile of the assessing authority, or as may be directed by law. * * * ” Constitutionally, plaintiff must have his right, either before the courts or “as may be directed by law.”
The majority does not point to any law which provides an alternative for court testing of commission-changed assessments. Nor does the tax commission suggest any such law.
I believe that neither the statute (R.S. 47:1998, 2d para.) nor the Supreme Court decision (Dixon v. Flournoy, infra) relied on by the majority supports the majority’s unconstitutional holding.
But before discussing that case and statute, I would express my views on the question of venue, which I believe we cannot avoid deciding.

V enue

It appears to me that the declinatory exception to the venue is waived by urging this court to first decide the peremptory exception of no right (or cause) of action.
It also appears to me that the judgment appealed from, although silent as to venue, necessarily overruled the venue exception since the judgment did purport to adjudicate the case.
In any event, venue was proper in Jefferson Parish, the “domicile of the assessing authority”, Const. Art. 10, § 1. Regardless of what the statutes may provide concerning the assessment system, the Constitution provides for an “Assessor” in each parish, Art. 14, § 9, and for all real estate to be “valued at actual cash value, listed on the assessment rolls and submitted to the Louisiana Tax Commission”, Art. 10, § 12 (emphasis added). Obviously the Constitution views assessment of real estate as occurring prior to submission to the tax commission. The Constitution docs let the tax commission “exercise such authority in respect to assessment” as the Legislature might provide, Art. 10, § 2 (emphasis added). But the only actual assessment the Constitution made the duty of the tax commission was that of rolling stock of nondomiciliaries, Art. 10, § 16. Thus the Constitution provides two “assessing authorities”: usually the Assessor, but for some property the tax commission.
Accordingly, when Art. 10, § 1, authorizes assessment-testing in the courts “at the domicile of the assessing authority”, it is speaking of the domicile of the parish As *599 sessor unless the property is of a kind not assessed by the Assessor but only by the commission.

Dixon v. Flournoy

Dixon v. Flournoy, 247 La. 1067, 176 So.2d 138 (1965), was not a case of a last-minute change in assessment under R.S. 47:1990. There taxpayers complained in court of their original assessments (as approved by the tax commission), without first exhausting their available administrative remedies.
R.S. 47:1992 provides for the testing of the correctness of the ordinary assessment before the parish governing authority (except Orleans) sitting as a parish hoard of reviewers, where “any taxpayer may object” to his assessment (emphasis added). If the parish board refuses to recommend the taxpayer’s position to the commission, or if the commission refuses to comply with the board’s recommendation, then "Any taxpayer in any instance [of either such refusal] * * * may resort to the district court for review of such action. * * * ” R.S. 47:1998, first para. (Emphasis added).
Accordingly, as Dixon v. Flournoy points out, 176 So.2d at 140-1, the list-filing requirement of R.S. 47:1998, 2d para., is not applicable where the court action seeks review of such a refusal by parish board or commission. The Supreme Court in Flournoy declares the purpose of the source statute of the second paragraph of R.S. 47:1998, quoting its own earlier language in Bowman-Hicks Lbr. Co. v. Reid, 169 La. 905, 126 So. 232,235 (1930):
“ * * * It would seem to be too plain for dispute that the object of the Legislature in enacting the statute in question was to simplify the procedure whereby a taxpayer might judicially contest the correctness or legality of his assessment by requiring only the filing of a sworn return, dispensing with all subsequent proceedings involved in the objections and complaints of the taxpayer before the assessing authorities as a condition precedent for his right of action in the courts.” (Emphasis added.)
Thus understood, as a simplified alternative route to the courts, § 1998, 2d para., is unobjectionable. Filing a list under § 1956 (see also § 1953) brings an advantage: the list-filer can skip the parish board of reviewers and tax commission and go directly to court.
Here, the majority mistakenly concludes that failure to file a list subjects the taxpayer to whatever outrage might please the assessing authorities. This is a gross misconception, even more revolting in light of the commonly known (and thus judicially cognizable) fact that virtually nobody files a list of his property for assessment.
If non-filers were required to be treated as law-breakers there would be grave additional constitutional problems because of the near-universal noncompliance with the filing law, R.S. 47:1956.
But it ought to be clear that non-filers are only required to be treated as reward-refusers. Filing brings the reward of direct court testing of assessment. All that happens to a non-filer, and the only “penalty”, is that he must first exhaust administrative remedies before the parish board of reviewers and then the tax commission, and only if there unable to obtain satisfaction may he resort to the courts.
Accordingly, all that Dixon v. Flournoy holds is that, where he had available but did not seek administrative remedy, a taxpayer who did not file a list under § 1956 may not contest the correctness or legality of his assessment in the court.
That situation is not ours. Here, after the time for review by the parish board of reviewers had passed, and after the time for determination of appeals to the tax commission (§ 1992), i. e, at a time when administrative review was no longer available, the tax commission changed plaintiff’s assessment.
*600 There is no way to equate Dixon’s position to our plaintiff’s. Dixon plainly had an opportunity for an administrative hearing and judicial review, but simply did not exercise his right. Our plaintiff has never had an opportunity for a hearing. Dixon v. Flournoy does not dictate that we should refuse him one.

Construing R.S. 47:1998

R.S. 47:1998, and all of the Revised Statutes of 1950, “shall be construed as continuations of and as substitutes for the laws or parts of laws which are revised and consolidated herein.” R.S. 1:16.
R.S. 47:1998 is therefore now set forth in a footnote[1] in a single text with the Acts of which it was constructed.
*601 The most important fact in construing § 1998 as to a last-minute commission-ordered change in assessment is that the controlling source statute, Acts 1934, 2d Ex. Sess., No. 18, § 8, first sentence, provided "Any taxpayer shall have the right to test the correctness of any change in his assessment as provided by existing laws, provided he institutes suit within thirty days after the date of the written instructions of the Louisiana Tax Commission ordering the change.”[2] (Emphasis added.) So § 1998 must be construed under R.S. 1:16 as a continuation of and substitute for an act which expressly authorized any taxpayer to sue to test the correctness of a change in his assessment.
The second most important fact in construing R.S. 47:1998 on our facts is that its language of its second paragraph authorizing a list-filer to sue to contest “the correctness or legality of any assessment” of listed property is the identical language of its source, Acts 1924, No. 97, § 1. Presumably no change in law was intended in repeating the exact words of prior law. Yet plainly the 1924 Act had no application to last-minute commission-ordered changes in assessment, which were not authorized in 1924 nor until Acts 1934, 2d Ex.Sess., No. 18. Thus it would be erroneous construction of the 1924 Act’s words in R.S. 47:1998 to say that “assessment” includes “change in assessment”.[3]
A third fact is that § 1998 itself still stipulates (like the 1924 source) that “No other condition precedent than those specified herein” is required for suit (emphasis added). But the only reference to suits to test commission changes in assessments under R.S. 47:1990 is the statement they must be instituted within 30 days of the change order. That is the only “specified” condition precedent to such a suit.
Finally I note the general principle that a statute ought to be construed so as to have a constitutional rather than an unconstitutional effect.
From these principles and observations I construe R.S. 47:1998 as providing that a taxpayer may obtain judicial review (1) if unsatisfied after exhausting administrative review of an assessment; or (2) if a list-filer, then without going through the administrative procedure; or (3) if seeking review of a change in his assessment ordered by the tax commission under R.S. 47:1990 and suit is filed within 30 days of the change order.
The judgment appealed from should be reversed and this matter remanded, so as to allow plaintiff its day in court.

. Words neither italicized nor bracketed are common to both R.S. 47:1998 and the source provision. Italicized words were added in the revised statute; bracketed words were found in the source but omitted in the revision. Sources are set forth, also in brackets. Differences in capitalization and use of commas are generally ignored, as is the mere name change of “State Board” to “tax commission.”
“[That the action of the State Board, after considering the recommendation of the Parish Board of Reviewers, shall be final; always provided that the] Any taxpayer [may,] in any instance where he shall be dissatisfied with the action of the parish board of reviewers in refusing to make a recommendation with respect to an actual cash valuation to the tax commission or with the tax commission upon its refusal to comply with such recommendation, or in regard to the actual cash [valuable (sic)] valuation fixed by the tax commission [or where he may be dissatisfied with his local assessment], may resort to the district court [within the time and according to the law fixing the same] for review of such action. [So also may any taxpayer in any class] Where the parish board of reviewers have opposed and appealed the valuation fixed by the tax commission upon [such] any class of property [, resort to the courts for remedy in the event] and the tax commission [shall not alter] has not altered the valuation [as appealed for by the parish Board of Reviewers] in accordance with such appeal, any taxpayer of sueh class, [and this without any initial complaint by such taxpayer] whether or not he has filed an initial complaint with the parish board of reviewers or with the tax commission, may resort to the district court for review of sttch action. [Source: Acts 1916, No. 140, § 16, first two sentences.] [* * * all appeals to the State Board shall be determined on or before August 1st, and] Complaining [interests] taxpayers shall have [to November 1st] until the first day of November following the determination appealed from to resort to the district court[s] for [remedy] review after which they shall not have such right. [Source: Ibid., § 15, last sentence.]
“[That] Any taxpayer in [this] the State, the parish of Orleans excepted, who has filed a sworn list or return of his property for taxation on or before [April 1st] the first day of April of any year, shall have the right to institute suit in the court having jurisdiction of the cause of action, for the purpose of contesting the correctness or legality of any assessment made against the property listed on [the said] such return. [Source: Acts 1924, No. 97, § 1.] [No suit or legal proceeding provided for in Section 1 above] Any such suit or legal proceeding shall not be instituted before the assessment rolls are filed in the office of the clerk of court of the parish in which the property is situated as now provided by law, nor later than thirty [(30)] days following the date of filing of the [said] rolls, [.] [Source: Ibid, § 2] except suits [Any taxpayer shall have the right] to test the correctness of [any] changes in [his] assessments made under written instructions of the tax commission, pursuant to R.S. Jft :1990, [provided he institutes suit] which suits must be instituted within thirty days after the date of the written instructions of the [Louisiana] tax commission ordering the change. [Source: Acts 1934, 2d Ex.Sess., No. 18, § 8, first sentence.] No other condition precedent than those specified herein shall be required of the taxpayer in order to permit him to exercise the right of action hereby granted. [Source: Acts 1924, No. 97, § 3.]”
(We are not concerned with the balance of R.S. 47:1998, but it too is a hodgepodge. Paragraphs third and fourth of R.S. 47:1998 are near-verbatim the second and first sentences of the fifth paragraphs of Acts 1898, No. 170, § 24 as amended by Acts 1906, No. 63, § 1. Para *601 graph fifth contains Acts 1914, No. 219. Paragraph sixth is near verbatim Acts 1898, No. 170, § 56, 2d para.; but see Acts 1916, No. 140, § 16, 2d to last sentence.)

. The same 1934 Act was the source of R.S. 47:1990, and was the first authorization of commission changes after rolls were final and up until the taxes were paid.

. On the other hand, if we could say that the 1924 word “assessment” now includes the 1934-authorized “change in assessment”, X would equally have to construe the 1916 words of § 1998’s first sentence to include later authorization to the commission. “Any taxpayer in any instance where he shall he dissatisfied * * * in regard to the actual cash valuation fixed by the tax commission, may resort to the district court for review of such action” is broad enough grammatically to include changes in assessment by the commission. But historically, these 1916 words could not include such changes because they were not part of our law until 1934.